IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

GENEVA B. LIVINGSTON,            )
                                 )
            Plaintiff,           )
                                 )
    v.                           )        1:11CV501
                                 )
CAROLYN W. COLVIN,               )
Acting Commissioner of Social    )
Security,[1]                     )
                                 )
            Defendant.           )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Plaintiff, Geneva B. Livingston, brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act. The court has before it the certified administrative record and the parties have filed cross-motions for judgment.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

I.  **BACKGROUND**

Plaintiff protectively filed applications for disability insurance benefits and supplemental security income on July 11, 2008, alleging a disability onset date of November 2, 2007. (Tr. at 14, 117-27.)  After her claims were denied initially (Tr. at 48-49) and upon reconsideration (Tr. at 50-51), Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which took place on April 13, 2010 (Tr. at 23).  The ALJ ultimately found that Plaintiff was not under a disability from the date of her applications through the date of the decision.  Specifically, the ALJ identified Plaintiff's right carpal tunnel syndrome, arthritis, and back and arm pain as severe impairments, but found that she nevertheless retained the residual functional capacity ("RFC") to perform the full range of medium work.  (Tr. at 16, 18.)  Because, based on vocational expert testimony, the ALJ determined that Plaintiff's RFC would allow her to perform all of her past relevant work, he concluded that Plaintiff was not disabled under the Social Security Act. (Tr. at 20-22.)  After unsuccessfully seeking review of this decision by the Appeals Council, Plaintiff filed the present action in this court.

**II. ANALYSIS**

Plaintiff now argues that the ALJ erred in formulating her RFC. Specifically, she alleges that the ALJ failed to (1) apply the correct standard to evaluate Plaintiff's pain, (2) properly consider the opinions of Plaintiff's "treating and examining physicians and other medical sources," (3) perform a "function-by-function analysis" of Plaintiff's functional limitations and restrictions, (4) consider the combined effects of all of Plaintiff's impairments, including non-severe impairments, and (5) further develop the record in light of ambiguous evidence surrounding Plaintiff's mental symptoms. Plaintiff further contends that the alleged errors in her RFC assessment and corresponding hypothetical questions to the vocational expert rendered the ALJ's finding as to past relevant work at step four of the analysis unsupported by substantial evidence.

**A. Residual Functional Capacity (RFC)**

**i. Credibility Determination of Subjective Pain**

Plaintiff first challenges the ALJ's credibility finding, arguing that the ALJ failed to articulate his reasons for discrediting her subjective pain testimony or consider her objective medical evidence of pain. (Pl.'s Mem. in Supp. of Mot. for J. on the Pleadings ("Pl.'s Br.") (Doc. 21) at 14, 16.)

In <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996), the Fourth Circuit set forth a two-part test for evaluating a claimant's statements about symptoms. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" <u>Id.</u> at 594 (quoting 20 C.F.R. §§ 416.929(b) & 404.1529(b)). If the ALJ determines that such an impairment exists, the second part of the test then requires consideration of all available evidence, including Plaintiff's statements about her pain or other symptoms, in order to evaluate the intensity and persistence of those symptoms, and to determine the extent to which they affect her ability to work. <u>Craig</u>, 76 F.3d at 596.

Notably, while the ALJ must consider Plaintiff's statements and other subjective evidence at step two, he need not credit them "to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers." <u>Id.</u> at 595. This approach facilitates the ALJ's ultimate goal, which is to accurately determine the extent to which Plaintiff's pain or other symptoms limit her ability to

perform basic work activities.  Thus, a plaintiff's "symptoms, including pain, will be determined to diminish [her] capacity for basic work activities [only] to the extent that [her] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).  Relevant evidence for this inquiry includes Plaintiff's "medical history, medical signs, and laboratory findings[,]" Craig, 76 F.3d at 595, as well as the following factors set out in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3):

    (i)   [Plaintiff's] daily activities;

    (ii) The location, duration, frequency, and intensity of [Plaintiff's] pain or other symptoms;

    (iii) Precipitating and aggravating factors;

    (iv) The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or [has] taken to alleviate [her] pain or other symptoms;

    (v) Treatment, other than medication, [Plaintiff] receive[s] or [has] received for relief of [her] pain or other symptoms;

    (vi) Any measures [Plaintiff] use[s] or [has] used to relieve [her] pain or other symptoms (e.g., lying flat on [her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

    (vii) Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

Where the ALJ has considered these factors and has heard Plaintiff's testimony and observed her demeanor, the ALJ's credibility determination is entitled to deference. Kearse v. Massanari, 73 F. App'x 601, 603 (4th Cir. 2003) ("An ALJ's assessment of a claimant's credibility regarding the severity of pain is entitled to great weight when it is supported by the record."); see Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). As such, this court "will reverse an ALJ's credibility determination only if the [plaintiff] can show it was 'patently wrong.'" Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000) (quoting Herr v. Sullivan, 912 F.2d 178, 181 (7th Cir. 1990)); Bekat v. Colvin, No. 1:10CV159, 2013 WL 6850611, at *5 (M.D.N.C. Dec. 30, 2013).

In the present case, the ALJ determined at step one of Craig that Plaintiff's carpal tunnel syndrome, arthritis, and back and arm conditions could reasonably be expected to produce the pain she alleged. However, at step two, the ALJ found that Plaintiff's testimony regarding the intensity and persistence of her pain was incredible to the extent it would prevent her from performing medium work. Contrary to Plaintiff's argument, the ALJ's decision included ample support for this conclusion.

The decision first explains that Plaintiff was able to perform medium work prior to being laid off for "business-related" reasons in November, 2007, and that

> [T]here is no evidence of significant deterioration in [her] medical condition since that layoff. A reasonable inference, therefore, is that [Plaintiff's] impairments would not prevent the performance of that job since it was being performed adequately at the time of the layoff despite a similar medical condition.
>
> Moreover, [Plaintiff] received unemployment insurance benefits for 24 months following that layoff. . . . One who receives unemployment insurance benefits holds [herself] out as having the ability to work if employment is offered. In order to collect unemployment insurance benefits[,] the individual must certify on a weekly basis that [she is] ready, able and willing to work. Such a circumstance, without explanation, contradicts [Plaintiff's] allegations that [she] was disabled as of [her] alleged onset date.

(Tr. at 19.) Indeed, without the "significant deterioration" of a claimant's medical condition, the past ability to work with a persisting condition will preclude, as a matter of law, a finding of disability based on that condition. Craig, 76 F.3d at 596 n.7. Furthermore, while the receipt of unemployment benefits alone is insufficient to prove an ability to work, Lackey v. Celebrezze, 349 F.2d 76, 79 (4th Cir. 1965), the ALJ may consider applications for unemployment insurance in making credibility assessments. Guthrie v. Colvin, No. 4:13-CV-57-FL, 2014 WL 2575318, at *6 (E.D.N.C. June 9, 2014). Moreover, as

discussed infra Section II.A.ii, the state agency medical consultants' analyses were consistent with the ALJ's RFC assessment. Therefore, the ALJ both applied the correct legal standards for evaluating Plaintiff's subjective claims of pain and adequately supported his credibility assessment.

### ii. Treating Physician

Plaintiff next argues that the ALJ failed to give due weight to the medical evidence provided by Plaintiff's treating physicians. The ALJ's decision recounted Plaintiff's medical records and opinion evidence at length. Plaintiff, however, contends that the ALJ "ignored" the opinions of her examining and treating physicians. Defendant correctly counters that "Plaintiff submitted no medical opinion from a treating or examining physician that reflected a judgment about what she could still do despite her impairment(s) and what her physical and/or mental restrictions were, if any." (Comm'r Mem. in Supp. of Mot. for J. on the Pleadings (Doc. 23) at 10.) In fact, Plaintiff fails to identify any physicians by name. Instead, her brief refers, more broadly, to various hospitals, clinics, and a consultative examiner, all of whom provided various diagnoses and clinical findings without evaluating the impact of those findings on Plaintiff's ability to work.

The state agency medical consultants provided the only such analysis of record. Dr. Ebosele X. Oboh's opinion incorporated the findings of all of Plaintiff's previous treating and examining physicians and concluded that Plaintiff's back and neck pain and other symptoms from her carpal tunnel syndrome and arthritis did not impair her ability to perform the full range of medium work as of August 19, 2008. (Tr. at 20, 257-64.) A second physician, Dr. Stephen Levin, affirmed Dr. Oboh's assessment after reviewing updated medical records on January 22, 2009. (Tr. at 294.) These opinions are consistent with the ALJ's above findings regarding Plaintiff's post-layoff condition.

### iii. Function-by-Function Assessment

Plaintiff next challenges the RFC assessment by contending that the ALJ erred by failing to make a function-by-function analysis of Plaintiff's abilities as required by Social Security Ruling 96-8p, <u>Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims</u>, 1996 WL 362207 ("SSR 96-8p"). According to this Ruling, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . . Only after that may RFC be expressed in terms of the exertional levels of work." 61 Fed. Reg. 34475.

SSR 96-8p specifically requires that the RFC assessment "address both the remaining exertional and nonexertional capacities of the individual" and further defines "exertional capacity" as "an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." 61 Fed. Reg. 34477. Significantly, SSR 96-8p notes that "[e]ach function must be considered separately." Id.

> Nevertheless, as this court explained in an analogous case,
>
> > [T]here is a distinction between what the ALJ must consider and what he must articulate in the decision. Ruling 96-8p contains a section entitled "Narrative Discussion Requirements" which details what an ALJ is required to articulate regarding a claimant's RFC. The section does not require an ALJ to discuss all of a claimant's abilities on a function-by-function basis but, rather, only to "describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." An earlier provision in the Ruling places an even finer point on the issue: "When there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity."

Joyce v. Astrue, No. 1:06CV27, 2009 WL 313345, at *14 (M.D.N.C. Feb. 5, 2009) (citations omitted).

Here, the ALJ discussed Plaintiff's medical history in detail, and his finding that Plaintiff can perform medium exertional level work - meaning that Plaintiff can lift and carry 50 pounds occasionally and 25 pounds frequently during an eight-hour day - is supported by (1) the opinions of state agency medical consultants Oboh and Levin, (2) her work stoppage for reasons other than allegedly disabling impairments, and (3) her subsequent collection of unemployment benefits.  The only possible suggestion of limitations not discussed by the ALJ stem from the reduced range of motion and right-hand strength and coordination identified by Dr. Elaine A. Staten in her consultative examination.  (Tr. at 19-20, 251-56.)  However, Dr. Staten mentioned no restrictions related to these findings, and the two state agency consultants who evaluated this information opined that her findings merited no further work restrictions. Again, Plaintiff points to no evidence contrary to the ALJ's decision other than her own subjective pain allegations.

      **iv.   Combined Effects of Impairments**

Plaintiff next argues that the ALJ failed to consider the combined effects of all of her impairments, including her non-severe impairments, when evaluating her RFC.  In particular, she challenges the ALJ's omission of limitations related to her depression, which the ALJ classified as non-severe. In raising

this challenge, Plaintiff also contends that the ALJ erred in failing to further develop the record surrounding her alleged mental impairment.

As Defendant correctly notes, the ALJ explicitly considered Plaintiff's allegations of depression, which she raised for the first time at her hearing, and concluded that her depression was a medically determinable mental impairment. (Tr. at 17.) The ALJ then considered the extent to which depression interferes with Plaintiff's ability to function in four broad functional areas: activities of daily living; social functioning; concentration, persistence, and pace; and episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(2)-(3) and 416.920a(c)(2)-(3). The ALJ found, based on Plaintiff's testimony, medical records, and the findings of two psychiatric consultants, that Plaintiff had no restrictions in terms of daily living or social functioning, mild limitations in concentration, persistence, and pace, and had experienced no episodes of decompensation. (See Tr. at 265-92.) The ALJ therefore concluded that Plaintiff's "depression does not cause more than minimal limitation on [her] ability to perform basic mental work activities and is therefore non-severe." (Tr. at 17 (citing Tr. at 166-73, 213, 252-56, 296-300).)

### v. ALJ's Duty to Develop the Record

Plaintiff does not directly challenge the findings related to her depression, nor does she explain what, if any, limitations from depression should be included in her RFC. Instead, she suggests that evidence of depression existing prior to the hearing "indicated a severe problem relating to depression, as well as bipolar or maybe schizophrenia." (Pl.'s Br. (Doc. 21) at 21.) She argues that this evidence created an "independent, affirmative duty" for the ALJ to continue her hearing and further develop the record. (Id.) While ALJs have a general duty to adequately develop the record, Craig, 96 F.3d at 591, "[a]n ALJ is under no obligation to supplement an adequate record to correct deficiencies in a plaintiff's case." Lehman v. Astrue, 931 F. Supp. 2d 682, 693 (D. Md. 2013); see Rice v. Chater, 53 F.3d 329 (4th Cir. 1995)(unpublished)("[ALJ] is not required to act as plaintiff's counsel."). "As such, a remand is appropriate only if the record is so deficient as to preclude the ALJ from making an educated decision as to the extent and effects of plaintiff's disability." Lehman, 931 F. Supp. 2d at 693.

Here, the supporting evidence cited by Plaintiff almost entirely post-dates the ALJ's decision and was not submitted to the Appeals Council. The only exceptions are records showing

that Plaintiff was prescribed anti-depressant medication in late 2009 in response to her new complaints of depression and that her medications and dosages were adjusted over the following months. (Tr. at 296-98, 306.) Such evidence, without more, fails to indicate a worsening condition, let alone creates an affirmative duty for an ALJ to seek out further information.

The majority of evidence Plaintiff cites in her brief centers on her involuntary commitment for psychosis on June 17, 2010, shortly after the ALJ's June 7, 2010 decision. At that point, Plaintiff reported to an emergency room physician that "little green men were trying to hurt her." (Pl.'s Br. (Doc. 21-1) at 4-5.) Understandably, her arguments seek to tie this later evidence to the time period at issue here, yet, despite its existence at the time of her appeal, Plaintiff failed to submit this evidence to the Appeals Council. (See Tr. at 1-10.) Moreover, the Appeals Council need only consider additional evidence if it "relates to the period on or before the date of the ALJ's decision." Wilkins v. Sec'y of Health & Human Servs., 953 F.2d 93, 95-96 (4th Cir. 1991) (citing Williams v. Sullivan, 905 F.2d 214, 216 (8th Cir. 1990)). In the present case, no evidence before the ALJ suggests any level of psychosis or serves to link Plaintiff's later psychosis to her earlier,

relatively mild depressive symptoms.[2]  Accordingly, substantial evidence supports the ALJ's RFC assessment.

    **B.**    **Past Relevant Work**

Plaintiff next argues that, because the hypothetical questions to the vocational expert were based on an erroneous RFC assessment, the ALJ's finding as to past relevant work at step four of the analysis was unsupported by substantial evidence.  Because, as fully explained above, substantial evidence supports an RFC for medium work, the ALJ did not err in basing his disability determination on the vocational expert's testimony that Plaintiff could return to her past medium and light exertional level jobs.

**III.**   **CONCLUSION**

    **IT IS THEREFORE ORDERED** that Plaintiff's Motion for Judgment on the Pleadings (Doc. 20) is **DENIED,** that Defendant's Motion for Judgment on the Pleadings (Doc. 22) is **GRANTED,** and that this action is dismissed with prejudice.  A judgment

---

[2] Because it was not available to the ALJ or the Appeals Council, this evidence, even if relevant, would not show that the ALJ's conclusion was unsupported by the substantial evidence available at the time or that the Appeals Council's decision was incorrect.  If Plaintiff still wishes to pursue a claim based on her more recent mental impairments, she remains free to do so in subsequent disability applications.

consistent with this Memorandum Opinion and Order will be entered contemporaneously herewith.

This the 29th day of September, 2014.

_____
United States District Judge